Saurí & Subirá, Plaintiffs and Appellants, *v.* Treasurer of Porto Rico, Defendant and Appellee.

Appeal from the District Court of Ponce in an Action for the Refund of Taxes.

No. 1758.—Decided July 18, 1918.

Taxation—Refund of Taxes.—In this case Saurí & Subirá, the owners of machinery for the manufacture of sugar and of the building in which the said machinery is mounted, paid taxes to the Insular Government for the fiscal year 1914–15 on said property, which was assessed at $22,470. At the beginning of 1915 Saurí & Subirá voluntarily appraised the said property for the purposes of taxation for 1915–16 at the sum of $32,470. On April 21, 1915, the Treasurer of Porto Rico notified Saurí & Subirá that the assessment of the said property had been fixed by the Treasury Department of Porto Rico at $153,280 and Saurí & Subirá appealed therefrom to the Board of Review and Equalization, which affirmed the official assessment made. Saurí & Subirá paid under protest the taxes for the first six months following the increased assessment, together with the surcharge, and brought suit against the Treasurer in the District Court of Ponce, praying for judgment to the effect that the taxes and surcharge had been wrongfully and illegally collected and should be refunded to the plaintiffs. The lower court rendered judgment dismissing the complaint and the plaintiffs appealed to this court, alleging as the sole ground of appeal that the judgment is not supported by the evidence.

After a careful examination of the evidence it was held that the plaintiffs failed to show that the taxes paid under protest are so manifestly excessive as to work a real and unequivocal hardship equivalent to a clear and

substantial injustice entitling the plaintiffs to relief by virtue of the action brought, as is required by the jurisprudence laid down by this court in the case of *The Ensenada Estates, Inc.,* v. *Hill,* 24 P. R. R. 462.

The facts are stated in the opinion.

*Mr. A. F. Castro* for the appellants.

*Messrs. Howard L. Kern,* Attorney General, and *Salvador Mestre, fiscal,* for the appellee.

MR. CHIEF JUSTICE HERNÁNDEZ delivered the opinion of the court.

This is an action for the refund of taxes paid under protest.

The following are the material allegations upon which the plaintiffs base their action:

That plaintiffs Saurí & Subirá are the owners of the following property situated in the municipality of Ponce, to wit: (*a*) machinery for the manufacture of sugar, consisting of an old plant with primitive batteries, and of an evaporator; (*b*) a building divided into two sections and constructed partly of masonry and partly of wood and zinc, the machinery being located in the masonry section.

That said machinery and buildings were assessed yearly by the Treasurer of Porto Rico for the purpose of taxation, the highest assessment being $22,470, which served as a basis for levying the taxes corresponding to the fiscal year 1914–15.

That at the beginning of the year 1915 the plaintiffs, for the purposes of taxation during the year 1915–16, declared the value of said property to be $32,470.

That the Treasurer of Porto Rico, without any previous assessment of the property in question—that is, without estimating its value after a proper inspection by himself personally or by an agent or employee—notified the plaintiffs on April 21, 1915, through Assessor C. H. Mead, that the assessed valuation was fixed at $153,280 and that the same would be final unless an appeal was taken therefrom within the legal period to the Board of Review and Equalization. The plaintiffs appealed and the said board sustained the assessment made.

That according to plaintiffs' information and belief, $150,000 of the said sum of $153,280 represented the value of the machinery and the remaining $3,280 the value of the building, the value of the machinery being based on its suppossed daily grinding capacity of 300 tons of cane and $500 being assessed for each ton of cane ground daily.

That as a result of such assessed valuation of the said property an annual tax of $1,992.64 was levied, or $996.32 semi-annually, which tax the plaintiffs consider unjust and unlawful for the following reasons: (*a*) Because no previous assessment of the property was made for the purpose of levying the tax, as required by law; (*b*) because the tax was not levied on the basis of the value of the property in the market, but on the productive capacity of the machinery; (*c*) because, according to plaintiffs' information and belief, the capacity of the machinery was arbitrarily fixed at 300 tons of sugar daily; (*d*) because the actual and true market value of the property is much less than that declared by the plaintiffs for the purpose of taxation, or $32,470; (*e*) because the true capacity of all the machinery taken together—for it must necessarily be operated as a whole—is 115 tons of sugar daily. That the plaintiffs based their appeal to the Board of Review and Equalization on the same grounds as above set forth.

That the plaintiffs refused to pay the tax voluntarily, but as an order of seizure was issued against the property and was about to be executed, they were compelled to pay the tax for the first six months, amounting to $996.32 plus $39.86, delinquent charges, in order to avoid the sale of the property; which payments they made under protest on December 9, 1915, inasmuch as they deemed the tax unjust and illegal as to the excess over the true value of the property; that is, as to $1,575.34 of the annual tax, or $787.67 of the sum corresponding to the first six months, which, added to the delinquent charge of $39.86 unjustly collected, makes a total of $827.53.

The complaint concludes with a prayer that the court render judgment declaring that the collection of the said sum of $827.53 for taxes, including the delinquent charge, was unjust and illegal and ordering the refund of said amount to the plaintiffs.

The defendant answered the complaint denying certain facts, admitting others and alleging new matter in opposition to the complaint.

After trial the plaintiffs, in view of the evidence examined, made the following admission:

"The attorney for the plaintiffs now states that in view of the result of the evidence Saurí & Subirá admit that for the purposes of taxation during the fiscal year of 1915–16 the sum of $50,000 is a fair and reasonable valuation of their machinery on the basis of $500 for each ton of cane ground daily."

The court rendered judgment on July 19, 1917, dismissing the complaint in all its parts, without special imposition of costs, disbursements and attorney fees.

From the foregoing judgment the attorney for Saurí & Subirá appealed to this court and, as the sole ground of appeal, pleads that the lower court committed manifest error in weighing the evidence examined in the case, especially as there was no evidence to warrant a judgment against them.

Let us consider the evidence.

For the purposes of taxation for the year 1915–16 Saurí & Subirá submitted a report to the Treasurer on a printed form furnished by the Treasury Department, which report was admitted in evidence at the trial, the part thereof which refers to the mills and their capacity reading as follows:

"MILLS: No. 2.—Manufacturer, Fletchard; number of rollers, 3 each; capacity for 24 hours, 300 each; size of rollers, diameter 3 feet each; length, 6 feet each; value, $4,000 _____ $8, 000."

Subjoined to the said report is the following data requested and furnished by Saurí & Subirá to the Treasury:

"Cane ground—grinding period and cane produced during the 1914 crop.

"Tons of cane ground, 17,000.

"Date when grinding season began, December 10, 1913.

"Date when grinding season ceased, June 26, 1914.

"Total number of hours mills were operating, 1,400.

"Total sugar produced, 1,700 tons.

"Quantity sold in Island, all."

Noah Shepard, Chief of the Bureau of Taxation of the Treasury Department of Porto Rico, testified that for the purposes of taxation for 1915–16 a change was made in the basis of assessment by adopting as one of the determinant factors of assessment the basis of $500 for each ton of cane ground daily, but that this was not the only basis, for there were others for making the assessment, such as the various pieces of machinery necessary to constitute a working sugar factory; their cost laid down in Porto Rico; the cost of construction; the capacity of the machinery; the profits obtainable; the facility of communication; the contracts of the factory or the business which it can control; the facility of access from the factory to the docks and railroads; the location of the factory; the kind of cane and the quality of the land; and that for the purpose of the assessment of the factory in question it was estimated that its daily grinding capacity was 300 tons of cane each twenty-four hours.

Rafael Saurí, the manager of the sugar factory of Saurí & Subirá, testified that the mills of the factory have really a capacity of 300 tons each twenty-four hours and that he so notified the Treasurer of Porto Rico, but that they can not operate to their full capacity because the evaporators and other accessories would not permit it, the average running capacity of the mills being only eight hours, during which they grind an average of 100 tons of cane and are then shut down in order to carry out the whole evaporating process; that the capacity of 300 tons given in the report made to the Treasurer referred to the mill only and not to the entire

plant, for this can not grind more than 100 tons; that the grinding season began on December 10 and ended on June 26, during which period 7,000 tons of sugar were ground in 1,400 hours, with the mill operating from six to eight hours each day of twenty-four hours and without any strikes having taken place; that the remainder of the twenty-four hours was employed in evaporating and in making sugar, and that if the hours employed in the grinding were reduced to days of twenty-four hours the result would be fifty-eight days.

Julio Conesa, engineer, corroborated the testimony of Saurí, that although the mills have a capacity of 300 tons they can not be worked at their full capacity because they have not the proper shafts, and if they were provided with adequate auxiliaries they would grind that amount, but that the rest of the machinery is unequal to the task and unable to produce the quantity of sugar which the mills can grind; that considering the evaporators and the class of cane being ground during the first six months of the year 1915 on the day the report was made to the Treasurer of Porto Rico (for there are times when the cane contains a large quantity of water and requires greater evaporation and other times when the sucrose is greater and the cane contains less water), an average production of from 80 to 120 tons a day may be computed, according to the running of the machinery, in the absence of complications arising to prevent the same; that the installed plant is without value as old machinery and if sold as iron its estimated worth would be from twenty to thirty thousand dollars, but that from the viewpoint of the necessity for grinding cane witness believes that its value at the time would be as high as $150,000; that the reasonable value of the machinery does not exceed $30,000 when compared with modern machinery and the fact of its purchase at a time when the price of machinery was low.

Witness N. I. Stacy, mechanical construction engineer, testified that he had inspected the said machinery repeatedly

and found it impossible to appraise its value, inasmuch as its condition is such as to threaten a breakdown at any moment; that the transmission is so worn that it is impossible to say what pressure it should carry; that the piping is very thin, whether on account of acid corrosion is not known, and can not be properly cleaned because if the scales are removed its thickness would be very much reduced; that he would appraise the machinery as iron or junk as he can not give an opinion of what it would be worth as machinery for operating purposes, and that as machinery he considers it fit only to be thrown away; that in order to be able to estimate the value of any kind of machinery in Porto Rico for the manufacture of sugar, it would be necessary to ascertain the productive capacity of such machinery and the quantity of cane it grinds.

We have summarized all of the documentary and oral evidence examined at the trial and in view thereof we are unable to hold that the lower court committed manifest error in weighing the same, for it was not influenced by passion, prejudice, or partiality.

In support of their theory that the assessment is unjust because it is excessive, the appellants allege that although the mills of their machinery have a capacity of 300 tons of cane in twenty-four hours, which at the rate of $500 a ton would give a total daily production of $150,000, the remainder of the plant is capable of contributing to the manufacture of only 100 tons daily, which at the rate of $500 a ton represents a total of $50,000, and this is a reasonable valuation of the entire plant for the purposes of taxation.

The foregoing conclusion on the part of the appellants would be admissible if the capacity of the mills had been the only factor considered in making the assessment and it had not been affected by the other factors mentioned by Noah Shepard, Chief of the Bureau of Taxation, namely, the various pieces of machinery necessary to constitute a sugar factory;

their cost placed in Porto Rico; the cost of construction; the capacity of the machinery; the profit obtainable; the business the factory may control; the facility of access from the factory to the docks and railroads; the location of the factory; the kind of cane and the quality of the land. It has not been shown that, even considering these factors, the assessment should not exceed $50,000, as contended by the plaintiffs. Perhaps those very factors influenced the minds of Saurí & Subirá when they increased the valuation of the machinery, which in the fiscal year 1914–15 was valued at only $22,470, to $32,470 and admitted as a result of the evidence that $50,000 was a fair and resonable valuation of the machinery for the purposes of assessment for taxation in the said fiscal year of 1915–16, on the basis of $500 per ton of cane ground daily. It can not be contended that in order to show that an assessment is unfair one of the factors thereof may be attacked and the others disregarded. Witness Julio Conesa for the plaintiffs testified that the machinery in question, if sold as iron, could be estimated as worth twenty or thirty thousand dollars, but that from the viewpoint of the necessity for grinding cane he believes that it might be worth as much as $150,000.

Construing Act No. 35 of March 9, 1911, in the case of *Ensenada Estates, Inc.,* v. *Hill,* 24 P. R. R. 462, 489, we said:

"We do not mean to imply that every excessive valuation, in the total absence of other circumstances, would suffice to support an action to recover; but we do think that if the final valuation by the Board of Review and Equalization, either considered alone or, as in the case at bar, together with other circumstances, is so grossly excessive as to work a serious and unmistakable hardship amounting to obvious and subtantial injustice, then the protesting taxpayer should not be denied access to the courts under our statute solely because he cannot show fraud or deliberate design upon the part of the assessors, or because the action of the board is not technically illegal or squarely against any statute. And we further hold that if a plaintiff can show substantial injustice, then the trial court may review and

revise the action of the Board of Review and Equalization in so far as may be necessary in order to ascertain whether or not the taxes in question were in fact or in the eye of the law unjustly or wrongfully collected and ought to be refunded."

Saurí & Subirá have had recourse to the Ponce court and have not shown there that the tax paid under protest is so obviously excessive as to work a serious and unmistakable hardship upon them amounting to clear and substantial injustice for which they are entitled to reparation by means of the action brought before said court.

The settled jurisprudence of this court is that the weighing of the evidence by the trial court will not be disturbed by this court on appeal in the absence of passion, prejudice, or partiality, or the commission of manifest error, and none of these grounds have been shown in this case.

The judgment appealed from should be

*Affirmed.*

Justices Wolf, del Toro, Aldrey and Hutchison concurred.